**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| KIMBERLY STARLING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETWORTH REALTY, USA, LLC AND DALLAS METRO HOLDINGS LLC<br><br>Defendants. | Case No.<br><br>**1:26-CV-410** |

**DEFENDANT DALLAS METRO HOLDINGS LLC'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Now comes Dallas Metro Holdings LLC, a Defendant in the above-referenced matter, and files this its Motion to Dismiss Plaintiff's First Amended Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and in support thereof would show the Court as follows:

## I. BACKGROUND.

1. Plaintiff Kimberly Starling ("Plaintiff") is an individual who brings this lawsuit on her own behalf and on behalf of a putative class of persons allegedly similarly situated. Plaintiff's claims are based on two phone calls allegedly in violation of the Telephone Consumer Protection Act of 1991 ("TCPA") and Section 302.101 of the Texas Business and Commerce Code.[1] Plaintiff originally brought this lawsuit on February 22, 2026 against two defendants: NetWorth Realty, USA, LLC ("NetWorth USA") and Dallas Metro Holdings LLC ("DMH"). [Doc. 1.] As the name implies, DMH is a holding company that is used to buy and sell real estate. On October 7, 2026, Plaintiff

[1] Plaintiff appears to have filed numerous other lawsuits all over the United States and in Puerto Rico alleging similar TCPA violations against various other persons and entities over the past several years.

filed her First Amended Class Action Complaint, adding the following new defendants: NetWorth Realty of Dallas / Fort Worth, LLC a/k/a NetWorth Realty of Dallas, LLC ("NetWorth DFW"), Tim Ball, and Synergy Data Group, S.A. d/b/a Home Finders Network ("Home Finders Network"). [Doc. 28.]

2. Plaintiff alleges her telephone number "has been on the National Do Not Call Registry for years since she registered it on the Registry, well prior to receiving the calls at issue." [Doc. 28, ¶ 31.] Plaintiff uses her number for "personal, residential and household needs and reasons." [*Id.*, ¶ 29]. Plaintiff also alleges that she "received at least two telemarketing calls from the same telephone number … in June 2025." [*Id.*, ¶ 32.] The first call on June 5 resulted in a voicemail "that had call center noise." [*Id.*, ¶ 33.] The second call on June 9 was from the same Caller ID as the first call and the caller stated they were from the Home Finders Network. [*Id.*, ¶ 35-36.] After taking down Plaintiff's information and gauging her interest, the caller said "he would transfer the call to his real estate agent," and Plaintiff was then transferred to Tim Ball. [*Id.*, ¶ 37-38.]

3. Plaintiff alleges Tim Ball is an agent of NetWorth DFW and upon the transfer of the second call he attempted to solicit Plaintiff to list or sell her property, as well as services for eviction and buying a new home. [*Id.*, ¶ 38-39.] Subsequent to the second call, Mr. Ball sent Plaintiff a proposed purchase agreement "purporting to represent [DMH] in the purchase of the property." [*Id.*, ¶ 40.] Plaintiff separately alleges DMH "was the buyer represented by Mr. Ball that sought to acquire Plaintiff's property." [*Id.*, ¶ 54.] Plaintiff further alleges DMH, by way of a resolution signed by its owner Mark Bloom, "designated Ray Albers, Defendant NetWorth DFW's general manager and Mr. Ball's licensed supervisor, as an authorized signatory to execute contracts and other instruments for the purchase and sale of real property on [DMH's] behalf." [*Id.*, ¶ 63.]

4. Plaintiff alleges DMH is vicariously liable for the two phone calls, because the calls "were made on its behalf and for its benefit, to procure Plaintiff's property for purchase by [DMH]." [*Id.*, ¶ 97.] Plaintiff further alleges DMH "has no employees and acts only through agents like Mr. Ball." [*Id.*] Plaintiff further alleges DMH furnished "authority to tender a purchase contract in its name, with Mr. Ball designated as the contact for all notices to the buyer, and its own records identify Mr. Ball as the agent on the transaction." [*Id.*]

5. Based on the arguments and authorities set forth in this Motion, the Court should conclude that Plaintiff has failed to state a claim against DMH upon which relief may be granted. Because Plaintiff has already amended her complaint and cannot plead facts to validate her claims, this Court should dismiss all claims against DMH without leave to amend.

## II. <u>ARGUMENT & AUTHORITIES.</u>

### A. Standard of Review under Rule 12(b)(6).

5. To survive a motion filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard demands more than unadorned accusations, labels and conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-557. Factual allegations "must be plausible and amount to more than conjecture or speculation to survive dismissal under Rule 12(b)(6)." *Harbert v. Farmers Tex. Cnty. Mut. Ins. Co.*, Civil No. W-13-CV-143, 2013 U.S. Dist. LEXIS 194841 at *4 (W.D. Tex. Oct. 15, 2013) (citing *Twombly*, 550 U.S. at 555).

6. The Supreme Court has outlined a two-step process to evaluate a Rule 12(b)(6) motion to dismiss. First, the reviewing court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at

679. The tenet "that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. at 678*. The court must also take "note of the elements a plaintiff must plead to state a claim." *Id.* at 675. Second, any remaining well-pleaded factual allegations are considered to determine if they plausibly suggest an entitlement to relief. *Iqbal, 556 U.S.* at 678-679. In this second step, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. at 679*. If the "well-pleaded factual allegations do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. DMH is Not Directly or Vicariously Liable to Plaintiff Under the TCPA.**

7. TCPA Section 227(c) grants a private right of action to a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c)]." 47 USC § 227(c)(5). Section 227(c) regulates telephone calling practices for protection of the rights of privacy of those who have registered on the Do-Not-Call Registry. *Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Mass.*, No. EP-24-CV-00289-DB, 2025 U.S. Dist. LEXIS 76839 at *8 (W.D. Tex., April 15, 2025).

8. To establish liability under the TCPA, Plaintiff must show either: [1] DMH directly made the call; or [2] DMH had an agency relationship with the person who made the call. 47 USC § 227(c)(5); *Gonzalez,* 2025 U.S. Dist. LEXIS at *8. Direct liability under the TCPA applies only to a person or entity that "initiates" the telephone call. *Cunningham v. Lifestyles Dev., LLC*, 2019 U.S. Dist. LEXIS at 7-8 (E.D. Tex. August 8, 2019) (quoting *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 ¶ 24 (2013)). A person "initiates" a phone call for purposes

of the TCPA when the caller "takes the steps necessary to physically place a telephone call." *Id.* (quoting *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 ¶ 26 (2013)). Plaintiff does not allege DMH itself called her, nor does she allege any direct liability of DMH.

9. A defendant may be vicariously liable under the TCPA if Plaintiff can establish an agency relationship between the third-party caller and the defendant based on federal common law. *Heller v. Marriott Vacations Worldwide Corp.*, EP-22-CV-00398-FM-MAT, 2023 U.S. Dist. LEXIS 183421 at *10 (W.D. Tex. Oct. 11, 2023). Plaintiff must establish vicarious liability under one of three theories of agency: (1) actual authority; (2) apparent authority; or (3) ratification. *Id*. at *11-12.

**a. Actual Authority.**

10. Actual authority exists "when the principal expressly or implicitly grants the agent authority to perform a particular act." *Gonzalez*, 2025 U.S. Dist. LEXIS 76839 at *12 (citing Restatement (Third) Of Agency § 3.01 (2006) (stating "[a]ctual authority . . . is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf.")). The essential element of actual authority "is the principal's control over the agent's actions." *Id.* (citing *Heller*, 2023 U.S. Dist. LEXIS 183421 at *12). To show actual authority, Plaintiff must establish that DMH controlled or had the right to control Home Finders Network; more specifically, "[f]or TCPA cases, the relevant inquiry is 'whether the principal controlled—or had the right to control—the 'manner and means' of the telemarketing campaign.'" *Gonzalez*, 2025 U.S. Dist. LEXIS 76839 at *12 (W.D. Tex. Apr. 15, 2025) (quoting *Heller*, 2023 U.S. Dist. LEXIS 183421 at *12). The plaintiff must allege "both an agency relationship and 'actual authority to place the unlawful calls.'" *Aguilar v. Liberty Bankers Life Ins. Co*., 2026 U.S. Dist. LEXIS at *6 (S.D. Tex., July 14, 2026) (quoting *Pascal v. Agentra, LLC*, No. 19-CV-02418-DMR, 2019 U.S. Dist. LEXIS 179359 at *3 (N.D. Cal. Oct. 16, 2019)

(emphasis in original)). The level of control to establish agency "must be high and very significant." *Heller*, 2023 U.S. Dist. LEXIS at *12 (quoting *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014)).

11. In *Usanovic v. Americana, L.L.C.*, the plaintiff brought a putative class action against a real estate company based on telephone calls made by the company's independent contractor real estate agents. 775 F.Supp.3d 1133 (D. Nev. 2025). The plaintiff alleged the company trained its real estate agents to place unsolicited telephone calls to people that had expired property listing agreements with other real estate agencies. *Id.* at 1138. The plaintiff further alleged the company instructed its agents how to call, by obtaining leads from company-recommended vendors, as well as when to call and what to say, by providing scripts to the agents. *Id.* The plaintiff further alleged the company provided its real estate agents with website addresses and vendors from whom the agents could purchase telephone numbers to call consumers. *Id.* Those telephone numbers allegedly included numbers on the Do-Not-Call Registry. *Id.* None of the training or other materials provided by the company instructed the agents to first check whether a telephone number was registered on the Do-Not-Call Registry. *Id.*

12. The district court in *Usanovic* granted the company's motion to dismiss, because the plaintiff had not alleged that the trainings were required, or that the real estate agents were required to use the company-recommended website addresses and vendors, or that the company supervised the calls and instructed how many calls to make. *Id.* at 1140. More significantly, in rejecting allegations of actual authority, the court noted the plaintiff failed to allege the company instructed the agents to call numbers on the Do-Not-Call Registry. *Id.*

13. Because Home Finders Network was the entity that initiated the calls pursuant to the TCPA, Plaintiff must allege facts to show DMH had control over the manner and means by which Home Finders Network made the telephone calls at issue. Plaintiff's allegations in this matter fail

to approach the detailed allegations of the defendant's actions in *Usanovic* that were nonetheless rejected as insufficient to impose vicarious liability. Plaintiff does not allege DMH provided any instructions to Home Finders Network, or to Mr. Ball or any other party for that matter, regarding the means and methods of how to make telephone calls to persons such as Plaintiff. There are no allegations that DMH provided anyone with scripts or instructions on what to say, provided telephone numbers, or provided anyone with websites or vendors to obtain telephone numbers. Plaintiff does not allege that DMH specifically instructed Home Finders Network, or anyone else, to contact persons whose numbers were on the Do-Not-Call Registry. There are no allegations of any contractual agency relationship with Home Finders Network, and no allegations that DMH was aware and consented to Mr. Ball's association with Home Finders Network. Plaintiff's allegations are thus insufficient to state a claim against DMH based on actual authority as a matter of law.

**b. Apparent Authority.**

14. Apparent authority exists when "a third party reasonably believes the agent has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Gonzalez*, 2025 U.S. Dist. LEXIS 76839 at *15 (quoting *Heller*, 2023 U.S. Dist. LEXIS 183421 at *19); *see* Restatement (Third) of Agency § 2.03 cmt. c. Apparent authority "must be traceable to the conduct of the principal, not the unilateral representations of the telemarketer." *Id*. (citing *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985)). Thus, apparent authority may exist "only where 'the principal knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority.'" *Id*. (quoting *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 237 (4th Cir. 2019)).

15. Plaintiff does not allege she had any communications with DMH itself. Indeed, Plaintiff acknowledges that DMH has no employees and alleges it can only act through agents "like Mr. Ball." [Doc. 28, § 62.] Plaintiff does not allege Home Finders Network represented to her that

it was DMH's agent; she alleges Home Finders Network transferred her to its "real estate agent," i.e., Mr. Ball. [Doc. 28, § 37-38.] Plaintiff alleges that Mr. Ball forwarded a proposed real estate contract identifying Mr. Ball as agent for DMH, but Plaintiff does not allege DMH prepared the contract or otherwise notified Plaintiff that Mr. Ball was its agent. Indeed, Plaintiff's alleged contacts and communications regarding the proposed transaction were from Mr. Ball and Home Finders Network, not DMH. Plaintiff's allegations therefore fail as a matter of law to allege conduct by the purported principal sufficient to state a claim against DMH based on apparent authority.

**c. Ratification.**

16. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Gonzalez*, 2025 U.S. Dist. LEXIS 76839 at *16 (quoting Restatement (Third) Of Agency § 4.01(1) (Am. L. Inst. 2006)). A party "could ratify an act by failing to object to it or to repudiate it," or by "receiving or retaining [the] benefits it generates." *Id*. A purported principal, however, "is not bound by a ratification made without knowledge of material facts involved in the original at when the [party] was unaware of such lack of knowledge." *Id*. at § 4.06.

17. Plaintiff alleges DMH ratified the calls made by Home Finders Network by "knowingly accepting the benefits, including by appointing Mr. Ball as its agent for the prospective purchase transaction." [Doc. 28, § 98.] However, the alleged facts do not fit a ratification theory as to DMH. Plaintiff fails to allege what benefit DMH received or retained. Plaintiff does not allege that the proposed purchase transaction was completed – in fact, she did not sell her property. Plaintiff also does not allege any factual basis to support her allegation that DMH "knowingly" accepted the "benefits." Plaintiff also alleges no facts that support a contention DMH knew Home Finders Network had placed the calls to Plaintiff in the first place. Plaintiff's allegations are thus insufficient to state a claim against DMH based on ratification as a matter of law.

### C. DMH is Not Directly or Vicariously Liable to Plaintiff Under TBCC Section 302.101

18. Plaintiff alleges DMH violated Texas Business & Commerce Code § 302.101 because it is a "seller" or "salesperson" within the meaning of the statute, "or is otherwise liable for telephone solicitations made on its behalf…." [Doc. 28, § 136.] To the extent that Plaintiff alleges DMH is vicariously liable under Section 302.101 based on telephone calls by others who are alleged to be its agents, DMH refers to and incorporates its same arguments and authorities cited above to avoid needless repetition, which establish that Plaintiff has failed to allege facts sufficient to impose vicarious liability. *See Supra*, II.B.a-c.

19. Plaintiff also fails to state a claim under Section 302.101 because Plaintiff's factual allegations establish that DMH was not a statutory "seller" or "salesperson" and that the alleged communication was not a "telephone solicitation" within the meaning of Chapter 302. Section 302.101 prohibits a "seller" from making a telephone solicitation without the required registration certificate. Tex. Bus. & Com. Code § 302.101(a). The Code defines a "seller" as a person who makes a telephone solicitation on that person's own behalf, and separately defines a "salesperson" as a person employed or authorized by a seller to make a telephone solicitation. *Id*. § 302.001(4)–(5). A "telephone solicitation," in turn, is a communication initiated to induce a person to purchase, rent, claim, or receive an item. *Id*. § 302.001(7).

20. Here, Plaintiff alleges that DMH's agent contacted Plaintiff for the purpose of attempting to purchase Plaintiff's real property. DMH was therefore acting as a prospective purchaser of property—not as a seller making a telephone solicitation to induce Plaintiff to purchase an item. Nor was Plaintiff being solicited to purchase, rent, claim, or receive property or services by or from DMH. Further, Plaintiff does not allege DMH itself made any telephone calls to Plaintiff. The conduct alleged simply does not fall within the statutory definitions necessary to

establish a violation of Section 302.101. Plaintiff has failed to plead facts establishing a violation of § 302.101. Accordingly, Plaintiff's claim under § 302.101 should be dismissed pursuant to Rule 12(b)(6).

WHEREFORE, PREMISES CONSIDERED, Defendant DALLAS METRO HOLDINGS, LLC prays that the Court grant this Motion to Dismiss in favor of Defendant and that Plaintiff take nothing by her claims, that Plaintiff's claims against Defendant be dismissed with prejudice, and for such other further relief to which Defendant may be justly entitled.

Respectfully submitted,

**ESPEY & ASSOCIATES, PC**
70 NE Loop 410, Suite 850
San Antonio, Texas 78216
Telephone: (210) 404-0333
Telecopier: (210) 404-0336

By: ____________________________
RICHARD W. ESPEY
State Bar No. 06667580
JONATHAN N. DARNELL
State Bar No. 24001967
*Email: espeyservice@lawespey.com
*service by email to this address only

*ATTORNEYS FOR DEFENDANT DALLAS METRO HOLDINGS, LLC*

**CERTIFICATE OF SERVICE**

I certify that on **November 25, 2026**, a true and correct copy of the foregoing document has been forwarded through the CM/ECF system which will send notification of such filing to all counsel of record.

RICHARD W. ESPEY
JONATHAN N. DARNELL